UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TARNEZ JOHNSON,

                Plaintiff,

v.

UNKNOWN PARTIES #1 et al.,

                Defendants.
_____/

Case No. 2:23-cv-52

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 5.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim. Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 3.)

**Discussion**

**I.       Motion to Appoint Counsel**

As noted above, Plaintiff has filed a motion to appoint counsel. Plaintiff contends that the

issues involved in this action are complex and that he has "extremely limited access to the law

library." (ECF No. 3, PageID.15.) Indigent parties in civil cases have no constitutional right to a

court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995);

*Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an

attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*,

992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.

In determining whether to exercise its discretion, the Court should consider the complexity of the

issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action

without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these

factors and determines that the assistance of counsel does not appear necessary to the proper

presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 3) will,

therefore, be denied.

**II.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The

events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi

Washington, URF Warden Connie Horton, Director of Mental Health Services Unknown Party #2,

and Qualified Mental Health Professionals (QMHPs) Unknown Parties #1. Plaintiff indicates that

he is suing all Defendants in their personal capacities. (ECF No. 1, PageID.1–2.) He also sues

Defendants Unknown Parties #1 and Unknown Party #2 in their official capacities. (*Id.*, PageID.2.)

Plaintiff's facts are scant. He alleges that on August 13, 2021, he was asleep on the top

bunk in his cell. (*Id.*) Plaintiff's cell mate, inmate Alex Kleinert, "stepped onto a stool and

proceeded to stab[] [P]laintiff with a[n] improvised weapon." (*Id.*) Plaintiff avers that inmate

Kleinert punctured Plaintiff's neck "next to a vital organ." (*Id.*) Plaintiff fell and sustained injuries

to his ribs and back. (*Id.*)

Plaintiff contends that at the time of the attack, inmate Kleinert, who suffers from "serious

mental illness," had not been taking his prescribed medication. (*Id.*) He contends that Defendants

violated his Eighth Amendment rights by allowing inmate Kleinert to remain in general population

instead of being placed in treatment or under observation. (*Id.*, PageID.2–3.) He also suggests that

Defendants Unknown Party #2, Horton, and Washington failed to supervise their subordinates,

allowing for the attack to happen. (*Id.*) Further, Plaintiff faults Defendants Washington and Horton

for not enacting policies "to prevent serious mentally ill prisoners [who were] not taking [their]

medication to be housed in general population with the rest of the prisoners." (*Id.*, PageID.3.)

Plaintiff also asserts negligence claims under Michigan state law. (*Id.*, PageID.3–4.) He seeks

declaratory relief and compensatory damages. (*Id.*, PageID.4.)

## III.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Section 1983 Claims

#### 1. Official Capacity Claims

Plaintiff sues Defendants Unknown Parties #1 and Unknown Party #2 in their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the

4

governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Plaintiff seeks both damages and declaratory relief. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's damages claims against Defendants Unknown Parties #1 and Unknown Party #2 in their official capacities.

An official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14.

Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Underlying this rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Plaintiff's complaint, however, is devoid of facts suggesting that Defendants Unknown Parties #1 and Unknown Party #2 are engaged in ongoing violations of federal law. Instead, Plaintiff's allegations concern events that occurred in 2021. Plaintiff, therefore, cannot maintain his official capacity claims for declaratory relief against Defendants Unknown Parties #1 and Unknown Party #2, and such claims will be dismissed.

### 2. Personal Capacity Claims

#### a. Claims Against Defendants Washington, Horton, and Unknown Party #2

Plaintiff avers that Defendant Unknown Party #2 violated his Eighth Amendment rights by failing to "enforce policies to guide subordinates['] conduct, and [by failing] to supervise." (ECF No. 1, PageID.2.) He contends that Defendant Horton violated his Eighth Amendment rights by

failing to hold the QMHPs accountable and by failing to "put in place policies to prevent serious mentally ill prisoners [who were] not taking [their] medication to be housed in general population with the rest of the prisoners." (*Id.*, PageID.3.) Finally, Plaintiff suggests that Defendant Washington is liable for violating his Eighth Amendment rights because she is "responsible for the condition[s] and practices that [led] to the plaintiff being assaulted by a mentally ill prisoner." (*Id.*) Plaintiff suggests that Defendant Washington's "indirect participation is to be held account[able] for the series of events that she knew or reasonably should have known would cause a constitutional violation, even if others actually performed the violation." (*Id.*)

Essentially, Plaintiff seeks to hold these individuals liable because of their respective supervisory positions. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *see also Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff's complaint is devoid of facts from which the Court could infer that Defendants Washington, Horton, and Unknown Party #2 encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in that conduct. Rather, Plaintiff suggests only that they failed to supervise their subordinates and failed to act, which is insufficient to impose § 1983 liability. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Washington, Horton, and Unknown Party #2 were personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. The Court, therefore, will dismiss Plaintiff's federal claims against Defendants Washington, Horton, and Unknown Party #2.

### b.      Claims Against Defendants Unknown Parties #1

Plaintiff contends that Defendant Unknown Parties #1, who he identifies as QMHPs, violated his Eighth Amendment rights by allowing inmate Kleinert to remain in general population even though he was noncompliant with his prescribed psychiatric medication. (ECF No. 1, PageID.2.) Plaintiff suggests that this failure led to Plaintiff being assaulted by inmate Kleinert.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually

9

every means of self-protection[,]" "officials have a duty . . . to protect prisoners from violence at

the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipses in original) (citations omitted). To

establish a violation of this right, Plaintiff must show that each Defendant was deliberately

indifferent to Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990);

*McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove

that he has been the victim of an actual attack to bring a personal safety claim, he must at least

establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238,

242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient

inferential connection" between the alleged violation and inmate violence to "justify a reasonable

fear for personal safety").

Here, nothing in Plaintiff's complaint, as pled, permits the Court to conclude that

Defendant Unknown Parties #1 were aware of and consciously disregarded an excessive risk to

Plaintiff's safety. *See Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. First, nothing

suggests that any of these individuals were aware that inmate Kleinert was not compliant with his

prescribed psychiatric medication. Furthermore, nothing suggests that they were aware that inmate

Kleinert had any violent tendencies or any inclination of harming Plaintiff if he stayed in general

population. Although the Court is sympathetic to the fact that Plaintiff was stabbed by inmate

Kleinert, Plaintiff's allegations, at most, rise to the level of negligence, which is insufficient to

demonstrate an Eighth Amendment violation. *See Farmer*, 511 U.S. at 837. Consequently,

Plaintiff's Eighth Amendment failure to protect claims against Defendant Unknown Parties #1 will

be dismissed.

B.     **State Law Claims**

As noted *supra*, Plaintiff asserts negligence claims pursuant to Michigan state law against

all Defendants. (ECF No. 1, PageID.3–4.) Ordinarily, where a district court has exercised

jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, the Court will dismiss Plaintiff's state law claims without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 3.)

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:     April 21, 2023                                /s/ Jane M. Beckering
                                                         Jane M. Beckering
                                                         United States District Judge